UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

MSP RECOVERY, LLC,                                    CASE NO. 1:15-cv-20732-RNS

    Plaintiff,

vs.

ALLSTATE INSURANCE COMPANY,

    Defendant.

_____/

## DEFENDANT ALLSTATE INSURANCE COMPANY'S MOTION TO DISMISS AND ACCOMPANYING MEMORANDUM OF LAW

Defendant,  Allstate Insurance Company ("Defendant" or "Allstate"), pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), respectfully requests the Court enter an order dismissing the claims of MSP Recovery LLC ("Plaintiff").  Plaintiff lacks standing to bring this action, and, in all events, Plaintiffs' claims based the Medicare Secondary Payer Act and "federal common law" fail as a matter of law.  The reasons for Allstate's Motion are fully set forth in the accompanying Memorandum of Law.

## MEMORANDUM OF LAW

## ALLEGATIONS OF COMPLAINT

The Complaint alleges Plaintiff is the purported assignee of FHCP, which is alleged to be a Health Maintenance Organization and a Medicare Advantage Plan ("MAO").  (Compl., ¶¶ 4, 12, 14.)   According to Plaintiff, Allstate was a primary payer obligated to pay for medical services for a patient (referred to as "L.J." or "Patient"), who is allegedly also an Allstate

Personal Injury Protection ("PIP") insured, for which FHCP had allegedly paid Medicare benefits.  (Compl., ¶¶ 4-5, 10-18.)

Plaintiff alleges the medical services provided to the Patient were reasonable, related and necessary, and were required to be paid within 30 days.  (Compl., ¶ 13.)  Plaintiff alleges that on September 12, 2014, Plaintiff's counsel sent a letter to Angela Hodges of Allstate advising of FHCP's rights as an MAO and FHCP's notice of lien pursuant to the Medicare Secondary Payer Act ("MSP").   (Compl., ¶¶ 14-15.)   Plaintiff alleges FHCP is entitled to recover and be reimbursed by Allstate for the amounts Allstate has allegedly failed to pay for this patient. (Compl., ¶¶ 17-18.)

According to Plaintiff, Allstate has failed to make payments as a primary payer under the MSP and otherwise failed to reimburse FHCP.  (Compl., ¶¶ 18-19.)  Plaintiff  asserts two counts. In Count I, Plaintiff asserts a "PRIVATE CAUSE OF ACTION FOR DOUBLE DAMAGES" under the MSP, 42 U.S.C. § 1395y(b)(3)(A).  (Compl., ¶¶ 42-48.)  In Count II, Plaintiff asserts an "ACTION FOR DAMAGES" under "federal common law," based "on the theory that Congress expected that MA organizations would be able to collect their damages."  (Compl., ¶¶ 49-56) (citing 42 U.S.C. § 1395w-22(a)(4)).)

## LEGAL STANDARDS

Dismissal under Rule 12(b)(6) is warranted where a complaint fails to state a claim upon which relief may be granted.  The sufficiency of Plaintiff's Complaint must be assessed in light of the requirements of Federal Rule of Civil Procedure 8 and the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 570 (2008), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under Rule 8, a pleading "must contain . . . a short and plain statement of the grounds for the court's jurisdiction, [and] . . . a short and plain statement of the claim showing that the pleader is

entitled to relief . . . ." Fed. R. Civ. P. 8(a)(1)-(2).   Under Rule 12(b)(6), dismissal should be granted if the plaintiff fails to make factual allegations that are "enough to raise a right to relief above the speculative level," and are sufficient to show "a plausible entitlement" to recovery under a viable legal theory.  *Twombly*, 550 U.S. at 555, 559.   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citations omitted).  Rule 12(b)(1) also allows a defendant to seek dismissal based on a plaintiff's lack of standing.  *Medimport S.R.L. v. Cabreja*, 929 F. Supp. 2d 1302, 1312 (S.D. Fla. 2013).

## ARGUMENT

### I.   The Complaint Should Be Dismissed Based upon Plaintiff's Lack of Standing to Sue.

"[S]tanding is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims."  *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005) (citation and internal quotation omitted).   "The essence of a standing question is whether the plaintiff has alleged . . . a personal stake in the outcome of the controversy[.]"  *Harris v. Evans*, 20 F.3d 1118, 1121 (11th Cir. 1994).  *See also Bostwick v. SMH (US) Inc.,* No. 1:97CV3074TWT, 1998 WL 934642, *2 (N.D. Ga. Oct. 30, 1998), *aff'd sub nom. Bostick v. SMH (US), Inc.*, 228 F.3d 413 (11th Cir. 2000) (the "threshold question to be addressed is whether the Plaintiff has a cognizable claim, that is, an individual who has constitutional standing to raise the claim . . . . This means that she must have a personal stake in the outcome of the controversy.") (citations and internal quotations omitted).

Under Florida law, in order to receive funds arguably due another, the plaintiff must have some form of assignment vesting such a right in that plaintiff.  *See, e.g., Hartford Ins. Co. of Se. v. St. Mary's Hosp., Inc.,* 771 So. 2d 1210, 1212 (Fla. 4th DCA 2000) ("Without any evidence

that Garcia assigned his right to PIP benefits to St. Mary's, there is no genuine issue of material fact concerning whether there was an assignment.  Therefore, St. Mary's does not have standing to bring suit against Hartford[.]"); *Progressive Exp. Ins. Co. v. McGrath Cmty. Chiropractic*, 913 So. 2d 1281, 1285 (Fla. 2d DCA 2005) ("For a medical provider to bring an action for PIP benefits, the insured must assign his or her right to such benefits under the policy to the medical provider. * * *  Thus the assignment of PIP benefits is not merely a condition precedent to maintain an action on a claim held by the person or entity who filed the lawsuit.  Rather, it is the basis of the claimant's standing to invoke the processes of the court in the first place.").  *Cf. Magner Int'l Corp. v. Brett*, 960 So. 2d 841, 845 (Fla. 4th DCA 2007) (finding valid assignment was made pursuant to an agreement, "giving [plaintiff] standing to enforce the covenant not to compete."); *Progressive Exp. Ins. Co. v. Hartley*, 21 So. 3d 119, 120 (Fla. 5th DCA 2009) (where insured's assignment to medical provider was invalid, insured retained rights to claim PIP benefits due under his insurance policy).

Here, the Complaint is devoid of any allegations supporting Plaintiff's standing to sue to recover benefits purportedly due to FHCP.  There is no indication a written assignment exists, and there are no non-conclusory allegations whatsoever to support the existence of any assignment.  Plaintiff merely alleges:  "MSP. . . is the assignee of FHCP as it pertains to any and all rights as assignee and/or as the party entitled to recover any amounts owed to FHCP by nature of ALLSTATE'S obligation as primary payer to pay for member, L.J.'s ('PATIENT') medical bills."  (Compl., ¶ 4.)

This conclusory allegation is insufficient to establish Plaintiff's standing to sue Allstate as an assignee.  *See, e.g., Sanctuary Surgical Ctr., Inc. v. Aetna, Inc.,* No. 11-80799-CV, 2012 WL 993097, *2 (S.D. Fla. Mar. 22, 2012) (noting medical providers may have standing to sue

under ERISA plans by obtaining a written assignment from beneficiaries, and dismissing ERISA claim where [as here] "Plaintiffs allege that '[e]very patient covered by Aetna assigned to Plaintiffs benefits to which the patient was entitled under his or her insurance policy, including (but not limited to) the right to receive directly from Aetna payments to which the patient was entitled under the terms of the policy,'" because "this allegation is insufficient, as it does not establish a 'written assignment'"; Further stating "without access to the language of the assignments, the Court cannot evaluate their legal effect."); *Cooper v. Southwest Marine & Gen. Ins. Co.,* No. 2:13-CV-1651-KOB, 2014 WL 769394, *9-10 (N.D. Ala. Feb. 26, 2014) (granting motion to dismiss; noting that while "plaintiff claims in its response that National Claim Services is liable as an assignee of the breached contract, the plaintiff fails to allege any facts in the amended complaint that show an actual assignment of rights or duties to any agent occurred.").

Moreover, the Complaint on the one hand refers to Plaintiff, MSP, as the assignee, (Compl., ¶ 4), but later refers to "La Ley Recovery Systems - FHCP, Inc.," not Plaintiff, as the assignee (Compl., ¶ 14), and also states "FHCP is deemed to be the assignee" (Compl., ¶ 30). In addition, the Complaint alleges that not Plaintiff, but "FHCP seeks to recover and be reimbursed for the medical services provided to PATIENT," and also states, in Counts I and II, that not Plaintiff, but "FHCP brings" this action and demands judgment against Allstate. (Compl., ¶¶ 47, 54 and "Wherefore" clauses.) On the face of the Complaint, therefore, it is unclear which entity, if any, is the assignee, or which entity actually owns the purported causes of action Plaintiff asserts.

In short, Plaintiff has failed to allege any facts demonstrating Plaintiff's standing. Plaintiff's conclusory allegation that it is an "assignee" is simply not enough to "to raise a right to relief

above the speculative level," hence is fatally deficient under *Twombly*.   550 U.S. at 555. Dismissal of Plaintiff's Complaint is warranted on that ground alone.

## II.     Plaintiff's Claim for a "Private Cause of Action" under the MSP Statute Fails as a Matter of Law.

The Medicare Act (codified as 42 U.S.C. §§ 1395 – 1395kkk-1) was amended when Congress created the MSP statute.   The intent behind the MSP statute was to make Medicare insurance secondary to any primary plan that must pay for a Medicare recipient's medical expenses.  42 U.S.C. § 1395y(b)(2)(A).  So, if Medicare were to make a "conditional" (primary) payment on behalf of a Medicare recipient, the primary plan would be required to reimburse the government via the Medicare Trust Fund.   42 U.S.C. § 1395y(b)(2)(B)(ii).   The MSP also provides the government with the right to recover double damages from a responsible entity refusing to reimburse the Trust Fund.   42 U.S.C. § 1395y(b)(2)(B)(iii).   In addition, the MSP includes a private cause of action for double damages, as set forth in 42 U.S.C. §1395y(b)(3)(A). This statute provides, in pertinent part:

(3)  Enforcement

(A)  Private cause of action

There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A).

42 U.S.C. §1395y(b)(3)(A).

The private cause of action "allows Medicare beneficiaries and healthcare providers to recover medical expenses from primary plans."  *Parra v. PacifiCare of Arizona, Inc.,* 715 F.3d 1146, 1152 (9th Cir. 2013).  In *Glover v. Liggett Group, Inc.*, 459 F.3d 1304 (11th Cir. 2006), the Eleventh Circuit considered when a private cause of action may be asserted under the MSP.  The

Court explained: "About a primary plan's duty to reimburse Medicare, the MSP says the following things: 'A primary plan, and an entity that receives payment from a primary plan, shall reimburse the appropriate Trust Fund for any payment made by the Secretary under this subchapter with respect to an item or service *if it is demonstrated that such primary plan has or had a responsibility to make payment* with respect to such item or service.'" *Id.* at 1308 (quoting 42 U.S.C.A. § 1395y(2)(B)(ii)) (emphasis Court's). The court noted the MSP further states: "A primary plan's *responsibility for such payment may be demonstrated by* a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by *other means.*" *Id.* The Court held a primary plan cannot "fail" to pay "in accordance with paragraph[ ] ... (2)(A)" of Section 1395y -- and, thus, cannot be liable under the private cause of action -- unless its responsibility to pay for the treatment has been demonstrated. *Id.* at 1308-09 (further stating: "When Plaintiffs filed their MSP claim, Defendants' responsibility to pay for items or services had not yet been "demonstrated," which is a condition precedent to Defendants' obligation to reimburse Medicare under section 1395y(b)(2)(B)(ii). Until Defendants' responsibility to pay for a Medicare beneficiary's expenses has been demonstrated (for example, by a judgment), Defendants' obligation to reimburse Medicare does not exist under the relevant provisions. Therefore, it cannot be said that Defendants have 'failed' to provide appropriate reimbursement.")

Similarly, in *Stalley ex rel. U.S. v. Catholic Health Initiatives*, 458 F. Supp. 2d 958 (E.D. Ark. 2006), *aff'd sub nom. Stalley v. Catholic Health Initiatives*, 509 F.3d 517 (8th Cir. 2007), the court held that the plaintiff, who brought an action on behalf of the United States against health care providers seeking to recover monies allegedly owed Medicare, failed to state claim

under the MSP where the plaintiff failed to allege facts establishing the defendants' responsibility for payment. The Court explained that the defendant's responsibility for payment of a Medicare beneficiary's medical costs must be demonstrated before an MSP private cause of action for failure to reimburse Medicare can properly be brought under section 1395y(b)(3)(A): "That is, the defendants' responsibility to pay for items or services must be demonstrated as a condition precedent to their obligation to reimburse Medicare under § 1395y(b)(2)(B)(iii)." *Id.* at 963-64 (*citing Glover*).

In *Brockovich ex rel U.S. v. Scripps Health*, No. 06-CV-1569WNLS, 2006 WL 4484161, *5 (S.D. Cal. Nov. 7, 2006), the court explained "Congress enumerated two ways to demonstrate responsibility to pay: a judgment and 'a payment conditioned upon the recipients' compromise, waiver, or release,' *i.e.*, a settlement. In both of these situations, the primary plan's obligation to pay is established, whether by adjudication or agreement of the primary plan, *before* the MSP action is filed, and with respect to *particular* expenses. Therefore, 'by other means' includes other instances of like kind where there is a previously established requirement or agreement to pay for specific medical expenses Medicare conditionally paid for." (Emphasis in original.) The court further stated: "Nothing in the Court's ruling requires an MSP claimant to demonstrate responsibility to pay under any particular theory of liability. Rather, the MSP requires that the evidence demonstrating responsibility to pay exist *before* a claimant files an MSP action, and be *specific and identifiable*, because those are the common, limiting features of the means Congress enumerated." *Id.* (emphasis in original). Because the plaintiff failed to allege facts demonstrating responsibility to pay, the court held she failed to state a claim under the MSP. *Id. See also In re Guidant Corp. Implantable Defibrillators Products Liab. Litig.,* 484 F. Supp. 2d 973, 981 n. 3 (D. Minn. 2007), *order amended on reconsideration on other grounds*, No. MDL

05-1708 DWF/AJB, 2007 WL 2028137 (D. Minn. May 9, 2007) (finding *Glover*'s "reasoning persuasive"; stating "if Ivens had standing, her MSP claims would nonetheless fail because Guidant's responsibility to reimburse Medicare has not yet been determined."); *National Renal Alliance, LLC v. Blue Cross & Blue Shield of Georgia, Inc.,* 598 F. Supp. 2d 1344, 1354 n. 5 (N.D. Ga. 2009) (in finding plaintiffs could not bring private cause of action under MSP, noting: "Nor have Plaintiffs alleged that Blue Cross has a 'demonstrated responsibility' to pay greater than Blue Cross's reimbursement to Plaintiffs."); *Fresenius Med. Care Holdings, Inc. v. Brooks Food Grp., Inc.,* No. CIV.A. 3:07CV14-H, 2007 WL 2480251, *8 (W.D.N.C. Aug. 28, 2007) (dismissing MSP claim; noting the "MSPA makes it a condition precedent to reimbursement that there be a "demonstrated" responsibility to pay for items or services," and holding "there has clearly been no finding at this time of the Defendants' responsibility for the contested payments. If and when such a determination is made, the Defendants should understand their responsibility to reimburse Medicare for funds which otherwise would not have been paid on Ms. Kirkpatrick's behalf.  If, at that time, the Defendants fail to reimburse the appropriate funds, then the MSPA allows for a private cause of action for double damages."); *Larson v. Liberty Mut. Fire Ins. Co.*, No. CIV. 09-00308 SOM/BM, 2010 WL 1962942, *4 (D. Haw. May 13, 2010), *aff'd*, 509 F. App'x 641 (9th Cir. 2013) ("To the extent the Amended Complaint seeks to add a claim under the [MSP], asserting that Liberty Mutual should have provided primary insurance coverage, the amendment would be futile because Larson's allegations, even if true, do not 'demonstrate' Liberty Mutual's responsibility for payment for items or services, which is a condition precedent to a § 1395y private cause of action.").

    *United States ex rel. Mason v. State Farm Mutual Automobile Insurance Co.*, No. CV07–297–S–EJL, 2009 WL 2486339 (D. Idaho Aug.13, 2009), is also instructive.  There, the court

dismissed the plaintiff's claims against an automobile insurer, State Farm, alleging State Farm avoided its obligation to pay under its insurance policy and to reimburse Medicare for medical charges plaintiff incurred in an automobile accident.   State Farm disputed that it knew the hospital "had billed Medicare or that Medicare had paid the bill," and asserted "the allegation that it should have known is unsupported."  *Id., *3.   State Farm argue[d] its obligation to reimburse Medicare arises if and when the liability of State Farm as the primary payer is established not, as Plaintiffs argue[d], when the insurer makes a partial payment."  *Id.*  The court reasoned that "any duty [the insurer] had to reimburse Medicare did not arise at the time [the hospital] submitted its claim to Medicare[.]"  *Id., *6.[1]

Applying the above case law here, Plaintiff's Complaint is devoid of any allegation demonstrating Allstate's responsibility to pay anything.   The Complaint merely alleges in a conclusory manner that FHCP paid for medical services or supplies for the Patient, and that Plaintiff's attorney then demanded reimbursement from Allstate.  (Compl., ¶¶ 11-18.)  Plaintiff alleges because Allstate "failed to pay as a primary payor," it is "now required to pay twice the amount" that FHCP charged the Patient -- *i.e.,* $19,611.   (*Id.,* ¶¶ 16-18.)   Yet, to obtain reimbursement under the MSP statute, Plaintiff would have to show Allstate was in fact required to pay the medical charges at issue and that these charges were covered in the first instance under the applicable Allstate insurance policy and the Florida PIP statute.

There are many reasons Allstate may have no responsibility to pay, including that the PIP coverage was exhausted by other payments or the charges were not reasonable or related to the

---

[1] While *Mason* was based on claims brought under the Federal False Claims Act, 31 U.S.C. § 3729 et seq., the court noted that the MSP dictated those claims regarding Medicare reimbursement, and indicated that something more than the existence of an insurance contract, or the submission of a claim for benefits, is required to establish the insurer's duty to reimburse Medicare.  2009 WL 2486339, *5-6.

accident.  *See, e.g., United Auto. Ins. Co. v. Millennium Diagnostic Imaging Ctr., Inc*., 12 So. 3d 242, 245 (Fla. 3d DCA 2009) ("If a medical bill is submitted for treatment that is not reasonable, related, or necessary, there can possibly be no benefits 'due' under the policy, and therefore, that claim cannot be deemed 'overdue.'")  It is simply not enough, under *Twombly,* to allege that Allstate is a PIP insurer and therefore it must pay.  Unless Plaintiff alleges facts showing Allstate in fact had an obligation to pay, which it simply has not done, it cannot assert a claim based on FHCP's alleged status as a secondary payer under the MSP.

In fact, Plaintiffs' allegations underscore this pleading deficiency.   Plaintiff alleges Allstate must pay twice the amount of bills allegedly at issue -- *i.e.,* $19,611.   Under Florida law, however, PIP limits are capped at $10,000.   *See, e.g., GEICO Indem. Co. v. Gables Ins. Recovery, Inc.,* No. 3D13-2264, 2014 WL 6911333, *2 (Fla. 3d DCA Dec. 10, 2014) (citing § 627.736, Fla. Stat.; stating the "purpose of PIP benefits is to provide up to $10,000 for medical bills and lost wages without regard to fault.").   Because Allstate cannot be required to pay more than the $10,000 statutory cap, Plaintiff is clearly seeking amounts for which it cannot possibly demonstrate Allstate's responsibility to pay.

It should be noted that some courts in other jurisdictions have opined that *Glover*'s reasoning applies only to tortfeasors.   *See, e.g., Bio-Medical Applications of Tenn., Inc. v. Central States Health and Welfare Fund*, 656 F.3d 277, 290-91 (6th Cir. 2011).   However, *Glover* is controlling in this jurisdiction, so, as one court explained, *Glover* cannot be read as being limited to tort claims, as opposed to other actions, such as actions on an insurance contract:

> Because she had a contractual relationship with Clarendon, Fisher argues, she can demonstrate Clarendon's responsibility to pay "by other means."   However, the *Glover* court's analysis of the "by other means" clause is much broader than just the tort context: "The 'by other means' language in section 1395y(b)(2)(B)(ii)

> encompasses other instances of 'like kind' where there is a previously established requirement or agreement to pay for medical services for which Medicare is entitled to be reimbursed, which instances Congress chose not to try to exhaustively enumerate." *See id.* at 1291.

*Fisher v. Clarendon Nat. Ins. Co.,* No. 07-4092CVCNKL, 2008 WL 191813, *2 (W.D. Mo. Jan. 18, 2008).

This explanation of *Glover* makes sense. The Eleventh Circuit in *Glover* explained that its conclusion that section 1395y(b)(3) did not create a private cause of action where the "responsibility for payment of medical costs has not been previously established" was supported by additional considerations, including: "under Plaintiffs' interpretation, an alleged tortfeasor that is sued under the MSP . . . could not contest liability without risking the penalty of double damages: defendants would have no opportunity to reimburse Medicare *after* responsibility was established but before the penalty attached." 459 F.3d at 1309 (emphasis in original).

This reasoning applies with equal force to the PIP context. If any professed "secondary payer" could force a PIP insurer into court under the guise of a purported MSP claim without demonstrating in the first instance that the PIP insurer has responsibility to pay the claimed charges, that would turn any garden variety PIP claim into an MSP action.

Moreover, the MSP statute comes into play only where a conditional payment by a secondary payer is made. *See* 42 U.S.C.A. § 1395y(b)(2)(B)(ii) (referring to "conditional payments"; stating a "a primary plan, and an entity that receives payment from a primary plan, shall reimburse the appropriate Trust Fund for **any payment made** by the Secretary under this subchapter with respect to an item or service if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service.") (emphasis added).

There must have been a conditional payment in the first instance before any right to reimbursement from a purported primary payer can arise.

Plaintiff conclusorily alleges "FHCP has complied with all the conditions precedent" to bringing this action, that "Patient received medical services and/or supplies that FHCP paid," and that "FHCP made payments of Medicare benefits in the amount of $19,611.00." (Compl., ¶¶ 8, 11, 48.)  However, Exhibit D to Plaintiff's Complaint, which purports to be a "demand letter" from Plaintiff's Law Firm to Allstate, which this Court may consider on a motion to dismiss,[2] indicates "$0.00" was paid to the medical providers. (*See* Compl., Ex. D (listing amounts billed by providers; stating "The medical provider has received $ 0.00.").)  If the providers were paid nothing, that negates any contention that Plaintiff or FHCP supposedly made conditional payments for the amounts Plaintiff demands Allstate must pay.  Count I should be dismissed on this ground as well.

### III.   Plaintiff's Count II, "Action for Damages," also Fails as a Matter of Law.

Plaintiff also purports to bring claims on behalf of FHCP on the theory that FHCP is entitled to damages under the statute governing Medicare Advantage Plans. (Compl., ¶ 55.) Congress enacted two additional statutes, separate and apart from the MSP statute.  The statute governing Medicare Advantage Plans is codified as 42 U.S.C. § 1395w-21 to w-28, and the statute governing Health Maintenance Organizations is codified as 42 U.S.C. § 1395mm(e)(4).

Plaintiff seeks to recover damages (as a purported assignee) on behalf of FHCP.  As noted above, the Complaint refers to FHCP as both a Health Maintenance Organization (HMO)

---

[2] *See, e.g., Sheppard v. Bank of Am., NA,* 542 F. App'x 789, 791 (11th Cir. 2013) (district court's "consideration of the documents attached to the Complaint . . . did not convert the Bank Defendants' motion to dismiss into a motion for summary judgment, as both the Note and Notice were central to Sheppard's claims and their authenticity was undisputed.").

and a Medicare Advantage Organization (MAO).[3]   Nonetheless, Plaintiff's uncertainty as to FHCP's status is inconsequential because whether FHCP an HMO or MAO, Plaintiff has no private cause of action.

The MAO statute provides in pertinent part:

(4)  Organization as secondary payer

Notwithstanding any other provision of law [an MAO] may (in case of the provision of item and services to an individual under [an MAO] plan under circumstances in which payment under this subchapter is made secondary pursuant to section 1395y(b)(2) of this title) charge or authorize the provider of such services to charge, in accordance with the charges allowed under a law, plan or policy described in such section –

(A)  the insurance carrier, employer, or other entity under which such law, plan or policy is to pay for the provision of such services, or

(B)  such individual to the extent that the individual has been paid under such law, plan, or policy for such services.

42 U.S.C. § 1395w-22(a)(4).  The HMO statute is substantively identical.  *See* 42 U.S.C. § 1395mm(e)(4).

Unlike the MSP statute, which explicitly provides for a private cause of action in certain circumstances, the plain language of the MAO and HMO statutes have no such provision.  The MAO and HMO statutes simply authorize these entities to: (1) establish status as a secondary insurance source through their contracts; and (2) recover for conditional payments made on behalf of primary insurance carriers.  The MAO and HMO statutes are permissive in nature and they do not contain an implied private cause of action.

For example, in *Care Choices HMO v. Engstrom*, 330 F.3d 786 (6th Cir. 2003), the Court held no private cause of action existed under the HMO statute.  In so ruling, the Court explained

---

[3] Paragraphs 2, 4, 14 and 15 of the Complaint assert FHCP is an MAO.  Paragraph 12 asserts FHCP is an HMO.

the statute merely allows HMOs to "include a provision in their own policies making them a secondary insurer," and is "not intended to create an affirmative right to collect from other sources of insurance." *Id* at 790.  The Court further stated "If an HMO chooses to include such a provision in its insurance policy, its remedy would be based on a standard insurance contract claim and not on any federal statutory right." *Id.*

Similarly, in *Parra,* the Court held no private right of action existed under the MAO statute.  There, PacifiCare argued that "because the MAO Statute allows [an] MAO to charge a primary plan for conditional payments made on behalf of a plan participant, that statute grants it a private right of action to recover those payments as well." *Parra*, 715 F.3d at 1153.  The Court rejected PacifiCare's argument, stating:  "On its face, the MAO Statute does not purport to create a cause of action.  Rather, it simply describes when MAO coverage is secondary to other insurance, and permits (but does not require) [an] MAO to include in its plan provisions allowing recovery against a primary plan, as PacifiCare did here." *Id.*

Here, too, whether FHCP is an MAO or an HMO, neither the MAO statute nor the HMO statute can serve as a basis for Plaintiff's private right of action.  Apparently aware of this problem with Count II, Plaintiff alleges in a conclusory manner it brings this count under "federal common law," and is not proceeding on a "theory that 1395w-22(a)(4) implies a federal cause of action.  (Compl., ¶ 55.)  However, Plaintiff's Complaint allegations leave no doubt it is seeking to recover based on the MAO statute (or the HMO statute, depending on FHCP's status).  Indeed, Count II expressly alleges a "Medical Advantage organization or provider may charge in accordance with the charges that are allowed under a law, plan, or policy," and cites 42 U.S.C. § 1395w-22(a)(4)," clearly indicating Plaintiff is actually pursuing damages under that statute in connection with Count II.  Yet, as noted, no private right of action exists for such a claim.  And,

as *Twombly* makes clear, it is the substance of the Complaint, not the labels therein, which governs dismissal analysis. *Twombly,* 550 U.S. at 555.

In any event, Plaintiff fails to plead any basis for pursing a claim based on "federal common law," and the *Parra* court flatly rejected a similar claim:

> Even if PacifiCare lacks a private cause of action directly under the Medicare Act and is thus unable to state a claim under Count II, PacifiCare urges that we find an independent basis of federal jurisdiction over Count I, its plan-based claim, because that contract arises under federal "common law." PacifiCare argues that in the absence of such common law, state courts may reach conflicting decisions with respect to claims by MAOs against primary plans or settlement proceeds. But, of course, the same danger exists when different federal courts address an issue, and a generalized desire for uniformity does not suffice to warrant the creation of federal common law. . . . Rather, "absent some congressional authorization to formulate substantive rules of decision, federal common law exists only in ... narrow areas."

*Parra,* 715 F.3d at 1155 (citation omitted; quoting *Texas Indus., Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 641 (1981)).

The *Parra* Court further stated the "Medicare Act contains no express directive for federal courts to formulate a common law of subrogation, let alone a set of priorities between competing claimants to insurance proceeds, and we decline to do so." (citation omitted). *See also Sanson v. General Motors Corp.,* 966 F.2d 618, 621-22 (11th Cir. 1992) (declining to create federal common law fraud claim under ERISA where plaintiff had no statutory basis for maintaining such a claim); *Florida Farm Bureau Gen. Ins. Co. v. Voncille Jernigan,* No. 3:09CV145/MCR/EMT, 2010 WL 3927816, *5 (N.D. Fla. Sept. 30, 2010) ("once Congress addresses a subject, even a subject previously governed by federal common law, the justification for lawmaking by the federal courts is greatly diminished. Thereafter, the task of the federal

courts is to interpret and apply statutory law, not to create common law.") (citation and internal quotation omitted).

## IV.    Additional Considerations Supporting Dismissal.

Count I of the Complaint is titled "Private Cause of Action for Double Damages," and purports to seek damages under the MSP statute for Allstate's alleged failure to pay.  (Compl., p. 12 & ¶¶ 42-48.)  In violation of the *Twombly/Iqbal* pleading  requirements, Plaintiff generically asserts FHCP made payments of Medicare benefits for services rendered to the Patient and that Allstate must reimburse Plaintiff for same.  (*Id.*)  The Complaint, however, is devoid of any facts specifying the date such payments were made, to whom the payments were made, how many payments were made, or the amount of each payment made.  Plaintiff asserts only that a total amount of $19,611 was charged.  (*Id.,* ¶ 47.)

Moreover, Plaintiff does not assert it affirmatively and appropriately placed Allstate on notice of any conditional payments.  *See* 42 U.S.C.A. § 1395y(2)(B)(ii) ("If reimbursement is not made to the appropriate Trust Fund before the expiration of the 60-day period *that begins on the date notice of, or information related to, a primary plan's responsibility for such payment or other information is recei*ved, the Secretary may charge interest (beginning with the date on which the notice or other information is received) on the amount of the reimbursement until reimbursement is made (at a rate determined by the Secretary in accordance with regulations of the Secretary of the Treasury applicable to charges for late payments).") (emphasis added).

Nor does the Complaint set forth any facts supporting the allegation Allstate failed to issue any payment/reimbursement.  Such allegations lack specificity to place Allstate on notice of the claims against it, so that Allstate may adequately respond should this matter proceed.  *See, e.g., Reynolds v. Mouridy*, No. 5:10-CV-249-MTT, 2010 WL 4026117, *1 (M.D. Ga. Oct. 13,

2010) ("The Federal Rules employ a notice pleading standard, which requires that the complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief. . . . A pleading containing mere 'labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.' *Twombly,* 550 U.S. at 570.  Rather, a plaintiff must assert factual allegations that are 'enough to raise a right to relief above the speculative level.' *Id.* at 555.  The complaint must 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' *Id.*") (citation and internal quotation omitted).   In violation of *Twombly,* Plaintiff's Complaint allegations here leave Allstate to speculate about the grounds for the relief Plaintiff is seeking.

Count II of the Amended Complaint is titled "Action for Damages" and, like Count I, seeks damages against Allstate in the amount of $19,611.  (*Id.,* p. 13 & ¶ 52.)  The legal and factual basis for this count is unclear.  Plaintiff simply refers to portions of the MSP statute (and portions of the Code of Federal Regulations), and then makes a blanket declaration that it seeks to charge Allstate – again, for double damages.   (*Id.,* pp. 13-15.)  Not only does this count fail to comply with *Twombly/Iqbal,* but it duplicates Count I.  Plaintiff, therefore, not only fails to plead a viable cause of action, but also fails to distinguish or provide a separate basis for its alleged claim asserted as Count II of  the Complaint.  *See, e.g., Gandhi v. Carnival Corp*., No. 13-24509-CIV, 2014 WL 1028940, *4 (S.D. Fla. Mar. 14, 2014) ("Plaintiffs cannot recover the same alleged damages multiple times . . . .  this Court GRANTS Defendant's Motion to Dismiss Count III due to its duplicate nature."); *Jernigan v. Bellsouth Telecommunications, LLC*, 17 F. Supp. 3d 1317, 1326 (N.D. Ga. 2014) (dismissing duplicative count; stating the "Court finds that Plaintiff's retaliation claim is essentially a reclothed version of his ADAAA discrimination claim asserted in Count I.")   Count II should be dismissed for that reason as well.

## **CONCLUSION**

For all the foregoing reasons, Defendant, Allstate Insurance Company, respectfully requests this Court enter an order dismissing this action, with prejudice and without leave to amend, and granting Allstate such further relief as this Court deems just, proper and equitable.

Respectfully submitted,

By:  _/s/   Rachel M. LaMontagne_
     Rachel M. LaMontagne
     Florida Bar No. 094692
     E-mail address:
     rlamontagne@shutts.com
     Service address:
     allstateservice@shutts.com
     SHUTTS & BOWEN LLP
     Attorneys for Allstate
     201 South Biscayne Blvd., Suite 1500
     Miami, Florida  33131
     Telephone: (305) 347-7367
     Facsimile:  (305) 415-9848

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on March 2, 2015, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner of those counsel or parties who are not authorized to receive electronically Notices of Electronic Filings.


John H. Ruiz, Esq.
MSP Recovery Law Firm
5000 S.W. 75th Avenue, Suite 400
Miami, FL 33155
Tel.: (305)614-2222
*E-mail address:*
*serve@lawofficeslaley.com*
*Attorney for Plaintiff*


                                                  __/s/   Rachel M. LaMontagne_____